**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

THE WAY INT'L, *et al.*,                    :

            Plaintiffs,          :          Case No. 3:07cv294

 vs.                                         :          District Judge Walter H. Rice

EXECUTIVE RISK INDEMNITY,        :          Magistrate Judge Sharon L. Ovington
INC., *et al.*,
                            :
            Defendants.

═══════════════════════════════════════════

## REPORT AND RECOMMENDATIONS[1]

═══════════════════════════════════════════

## I.      INTRODUCTION

This matter is before the Court upon Defendant Executive Risk Indemnity, Inc.'s

["ERII"] motion to dismiss Count II of Plaintiffs' complaint (Doc. #7);[2] Plaintiffs' motion

to compel discovery (Doc. #63); and Defendant ERII's motion to strike expert testimony.

(Doc. #80).  Also before the Court are the parties' respective memoranda responsive to

those motions (Docs. #27, 29, 70, 81, 82), Defendant ERII's relevant discovery responses

(Doc. #42 at Exh. 3), and the record as a whole.

## II.      PROCEDURAL BACKGROUND/THE PARTIES' CONTENTIONS

---

[1]  Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

[2]See *also* Docs. #37 at p. 9; #40, #43 (denying without prejudice, then reinstating, said
Defendant's motion to dismiss).

Plaintiff The Way International, also known as The Way International, Inc. [collectively, "Plaintiffs"], is an Ohio not-for-profit organization formerly insured under a Directors, Officers and Trustees Liability Insurance Policy ["D&O policy"] issued by Defendant ERII. (*See* Doc. #3 at ¶¶2, 7-9). Plaintiffs' causes of action in this Court arise from a 2002 lawsuit filed against Plaintiffs in Tennessee ["the *Peeler* action"] by two individuals not involved in the present matter. (*See* Doc. #3). Plaintiffs set forth two claims against Defendant ERII based upon the ERII insurance policy alleged to have provided insurance coverage to Plaintiffs for the time period that was the subject of the *Peeler* action: 1) breach of contract, based upon Defendant ERII's failure to provide a defense to Plaintiffs in the *Peeler* action, and 2) breach of the duty of good faith, based upon Defendant ERII's allegedly unreasonable denial of a defense in the *Peeler* action.

On August 10, 2007, Defendant ERII moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Count Two of Plaintiffs' complaint (containing the "breach of good faith" allegations) as time-barred by the applicable statute of limitations. (Doc. #7). Defendant argues that the face of Plaintiffs' complaint discloses that their bad faith cause of action accrued no later than November 27, 2002, when Plaintiffs became aware of ERII's final denial of coverage for the *Peeler* action, and that the four-year statute of limitations applicable to bad faith actions in Ohio thus lapsed not later than November 27, 2006. Plaintiffs opposed the motion to dismiss, in essence urging that the statute of limitations on their good faith claim should not be deemed to have begun running "until the underlying litigation [*i.e.*, the *Peeler* action] concluded." (Doc. #27 at p. 4). Defendant

ERII's reply counters that the cases relied upon by Plaintiffs do not involve Ohio law, and thus are "inapposite and irrelevant." (Doc. #29 at pp. 1-2). ERII further urges that Plaintiffs are not entitled to equitable tolling of the four-year limitations period. (*Id*. at pp. 5-6).

In light of Plaintiffs' intervening motion for leave to amend their complaint (*see* Doc. #26), on March 31, 2008, the Court denied without prejudice Defendant ERII's motion to dismiss, in order to permit Plaintiffs additional time to present a request for leave to amend that would conform to the applicable procedural rules. (*See* Doc. #37). The Court specifically noted that "[i]f Plaintiffs do not seek leave to amend, the Defendants should move to reinstate their motions." (*Id*. at p. 10, n.8). When Plaintiffs failed to renew their request for leave to amend within the time provided by the Court, however, Defendant ERII in fact did move to reinstate its motion to dismiss (*see* Doc. #40), and the Court granted that request. (*See* Doc. #43). Accordingly, Defendant ERII's motion to dismiss Count II of Plaintiffs' complaint remains pending before this Court, and is ripe for decision.

On June 12, 2008, Plaintiffs moved to compel responses to a range of discovery requests propounded to Defendant ERII. (Doc. #63). With respect to discovery via deposition testimony, Plaintiffs ask the Court to "order [Defendant ERII] to withdraw [its] objection to" the deposition of Carrie Campi, identified as "a critical witness" who allegedly authored Defendant ERII's original letter denying coverage to Plaintiffs for the *Peeler* action. (*See* Doc. #63 at p. 2 & at Exh. 3, p. 3). As to discovery by requests for

production of documents, Plaintiffs ask that the Court require Defendant ERII to produce the four following categories of documents: a) all training, seminar and continuing education materials provided to three individuals (Carrie Campi, Todd McCullough and William Roy) alleged to have been involved in denying Plaintiffs a defense in the *Peeler* action (Doc. #63 at pp. 2-4; *see also* Doc. #42 at Exh. 3, Request for Production #2); b) documents reflecting "any claims input" relative to Defendant ERII's decision to deny Plaintiffs a defense in the *Peeler* action (Doc. #63 at p. 4; *see also* Doc. #42 at Exh. 3, Request for Production #5); c) copies of any American court decisions, together with copies of briefs filed in such cases, that have construed any of the provisions contained in Plaintiffs' D&O policy with Defendant ERII (Doc. #63 at p. 6; *see also* Doc. #42 at Exh. 3, Request for Production #8); and d) any documents reflecting any "different language" ever included in the provision labeled as Exclusion III(C) of Plaintiffs' D&O policy. (Doc. #63 at p. 7; *see also* Doc. #42 at Exh. 3, Request for Production #11). Finally, as to discovery by written interrogatory, Plaintiffs request that the Court compel Defendant ERII to provide answers to a number of specific questions. (*See* Doc. #63 at pp. 4-13). Several of those interrogatories ask Defendant ERII to identify any "legal authority" or other grounds on which it relied to deny Plaintiffs a defense in the *Peeler* action. (*See* Doc. #63 at pp. 4-5; Doc. #42 at Exh. 3, Interrogatories #3-6). Other interrogatories ask Defendant ERII to identify any claims against Defendant ERII by other insureds for failure to provide a defense (*see* Doc. #63 at pp. 5-6; Doc. #42 at Exh. 3, Interrogatory #7); any American court decision interpreting the policy provision relied upon by

Defendant ERII to deny Plaintiffs a defense (*see* Doc. #63 at p. 6; Doc. #42 at Exh. 3, Interrogatory #8); any other insureds denied a defense by Defendant ERII (*see* Doc. #63 at pp. 6-7; Doc. #42 at Exh. 3, Interrogatory #9); and any "different language" ever included in or court decision ever interpreting a provision like that in Section III(C) of Plaintiff's policy. (*See* Doc. #63 at p. 7; Doc. #42 at Exh. 3, Interrogatories #12-13).

In response, Defendant ERII filed a memorandum opposing all aspects of Plaintiffs' motion to compel. (Doc. #70). Claiming that it has done nothing to prevent Plaintiffs from deposing Campi, who no longer is an ERII employee, ERII urges that it also is powerless to compel her deposition. (*Id.* at pp. 2-3). Defendant ERII further contends that it has made appropriate objections to all other discovery requests that are the subject of Plaintiffs' motion. Defendant argues that the training materials requested in Request for Production #2 are irrelevant to the issue of the insurance contract's interpretation (*id.* at pp. 3-4); that it already has provided all appropriate documents responsive to Request for Production #5 (*id.* at p. 5); that the "legal authority" information sought in Interrogatories #3-5 was properly withheld as beyond the scope of permissible discovery (*id.* at pp. 5-6); that its previous response to Interrogatory #6 has been supplemented in deference to Plaintiffs' motion to compel and is complete (*id.* at p. 6); that Interrogatories #7-9 and Request for Production #8 overreach and would impose an undue burden on Defendant ERII (*id*. at pp. 6-9); and that Interrogatories #12-13 and

Requests for Production #11-12[3] improperly seek "irrelevant" drafting history information. (*Id.* at pp. 9-10). Plaintiffs filed no reply.

Defendant ERII subsequently moved to strike the testimony of Plaintiffs' expert. (Doc. #80). ERII avers that the expert report produced by Robert Rutter, the individual designated to testify as an expert of Plaintiffs' behalf, reveals that Mr. Rutter intends to offer his opinion "solely as to the interpretation and application of the insurance policy" at issue in this matter. (*Id.* at p. 3 & at Exh. A). Urging that such an opinion on a purely legal question and the "ultimate issue" in the case is not an appropriate topic for expert testimony, Defendant ERII asks that Mr. Rutter be stricken as an expert witness and "that this matter proceed without expert testimony." (*Id.* at pp. 4-7).

Plaintiffs oppose the striking of their designated expert. (Doc. #81). They first suggest that Defendant ERII waived any objection to Mr. Rutter's testimony by failing to raise the issue previously. (*Id.* at p. 2). Moreover, they urge that Mr. Rutter's proposed expert opinion properly would assist the trier of fact in determining "whether . . . a reasonable person . . . in [Plaintiffs'] position . . . would believe that they had insurance coverage for the [*Peeler*] action," as well as in determining other "material facts." (*Id.* at p. 4). Finally, Plaintiffs argue that striking Rutter's testimony prior to his deposition would be "premature." (*Id.* at p. 5). Defendant ERII counters that its objection is neither waived nor premature, and that Mr. Rutter's opinion, being restricted to questions of law

---

[3] Although Defendant ERII's opposing memorandum argues against answering Plaintiffs' Request for Production #12 (*see* Doc. #70 at p. 9), Plaintiffs do not appear to have moved to compel a response to that Request. (*See* Doc. #63 at pp. 7, 8). Accordingly, the Court's opinion will not address Request for Production #12.

implicated by Plaintiffs' breach of contract claim, does not touch on any subject proper for expert testimony.  (Doc. #82).

The parties apparently agree that Defendant ERII's denial of both coverage and the costs of defense as to the *Peeler* action was premised wholly upon Section III(C) of its subject D&O policy with Plaintiffs.  Section III(C) specifically provides that the policy "does not apply to Claims . . . in any way involving . . . emotional distress" unless they arise from employment or personal injury.  Although the record here contains only scant details about the nature of the *Peeler* action, it apparently is undisputed that the *Peeler* action did include claims for emotional distress outside of a personal injury or employment context.  The crux of the issue as to ERII's liability, then, is whether the language of the subject insurance policy nonetheless obligated Defendant ERII to provide Plaintiffs with a <u>defense</u> against such claims, even if the cost of any <u>liability</u> imposed for such claims would not have been covered under the policy.  The disputes now before this Court as to both discovery and expert testimony implicate the parties' differing views of the scope of evidence appropriate to the resolution of that narrow issue.  The Court will examine each such dispute in turn.

## III.    STANDARDS GOVERNING MOTIONS TO DISMISS

Fed. R. Civ. P. 12(b)(6) provides that a party may present by motion a defense that a particular claim for relief fails to state a claim upon which relief may be granted.  In ruling on such motions, the Court must "construe the complaint in the light most favorable to the plaintiffs, accept all of the complaint's factual allegations as true, and

decide whether the plaintiffs can prove any set of facts in support of their claims that would entitle them to relief." *Lindsay v. Yates*, 498 F.3d 434, 439 (6th Cir. 2007).[4]  The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999).

## IV.    DISCUSSION RE MOTION TO DISMISS COUNT II OF COMPLAINT

In effect, District Judge Walter H. Rice previously addressed the merits of the parties' contrary positions regarding the timeliness of Plaintiffs' Count II allegations when he considered the Wells Fargo Defendants' identical statute of limitations defense as a basis for denying Plaintiffs' motion to remand.  (*See* Doc. #37 at pp. 6-8).  There, Judge Rice stated as follows:

> Since this litigation was filed on July 3, [2]007, more than four years after the dated alleged by Plaintiffs in their Complaint,[5] upon which they contend they suffered a substantial loss as a result of the denial of coverage, the Court concludes that Plaintiff's Complaint demonstrates, as a matter of law, that their claim against Wells Fargo is barred by the four-year statute of limitations contained in [Ohio Rev. Code] § 2305.09.

(*Id.* at p. 8).  This Court later relied on that language in granting the Wells Fargo Defendants' reinstated motion for summary judgment.  (*See* Docs. #88, 93).  In light of Plaintiffs' intervening failure to amend their complaint – indicative of their apparent inability to avoid the significance of that November 27, 2002 date – and given that Judge

---

[4] *See also Bell Atlantic Corp. v. Twombly,* ___ U.S. ___, 127 S. Ct. 1955 (2007).

[5] (*See* Doc. #3, ¶ 22) (averring that "Defendants denied a defense" to Plaintiffs "on November 27, 2002.").

Rice's rationale is equally applicable to Count II's allegations as against Defendant ERII, the same holding is appropriate here. Defendant ERII's motion to dismiss Count II of Plaintiffs' complaint for failure to state a timely claim thus must be granted.

## V.    STANDARDS GOVERNING DISCOVERY AND USE OF EXPERTS

In order to be discoverable in federal civil cases, information "need not be admissible at the trial" – rather, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," so long as "the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The Rules specifically carve out an exception, however, for "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer or agent)." Fed. R. Civ. P. 26(b)(3)(A). Such materials are <u>not</u> subject to discovery unless they are "otherwise discoverable" <u>and</u> the party seeking their discovery "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Id.* This provision captures the qualified protection known as "the work-product doctrine." *See Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385 (1947).

The applicable evidentiary rules provide that expert testimony may be appropriate when "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Indeed, under Ohio's evidentiary rules, expert opinion testimony is admissible even "as to an

ultimate fact without infringing the function of the jury, if the determination of such ultimate fact requires the application of expert knowledge not within the common knowledge of the jury." *McKay Mach. Co. v. Rodman*, 228 N.E.2d 304, 305 (Ohio 1967) (Syllabus, ¶3). However, where expert testimony is offered "on a matter that is neither complex nor beyond the comprehension of the average person, a trial court does not abuse its discretion by excluding the evidence." *Weil v. Este Oils Co.*, 639 N.E.2d 1215, 1217 (Ohio Ct. App. 1994), *appeal denied*, 711 N.E.2d 234 (Ohio 1999). Thus, "where the [trier of fact] is reasonably well-equipped to interpret the facts without enlightenment from an expert, the latter's testimony is superfluous," and may be stricken. *In re Terex Corp.*, 70 B.R. 996, 1001 (N.D. Ohio 1987) (quoting 11 J. Moore & H. Bendix, *Moore's Federal Practice*, § 702.02 (1985)); *see also Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962) ("[E]xpert testimony not only is unnecessary but indeed may properly be excluded in the discretion of the trial judge . . . [if jurors] 'are as capable of comprehending the primary facts and of drawing correct conclusions from them as are' [expert witnesses]" (citation omitted)). The burden of establishing that proposed expert testimony meets admissibility requirements falls to the proponent of such testimony. *See United States v. Fullwood*, 342 F.3d 409, 412 (5th Cir. 2003), *cert. denied*, 540 U.S. 1111 (2004).

As a general rule in this Circuit, "[a]bsent any need to clarify or define terms of art, science, or trade, expert opinion testimony to interpret contract language is inadmissible." *North Amer. Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1281 (6th Cir. 1997)(quoting *TCP Indus., Inc. v. Uniroyal, Inc.,* 661 F.2d 542, 549 (6th Cir.1981)).

Because "the relationship between the insurer and the insured is purely contractual in nature," under the law of Ohio, too, "[t]he interpretation and construction of insurance policies is a matter of law to be determined by the court using rules of construction and interpretation applicable to contracts generally." *Nationwide Ins. Co. v. Tobler*, 609 N.E.2d 1318, 1320 (Ohio Ct. App. 1992)(citations omitted). As a result, where a contract is unambiguous, it is error to allow expert testimony regarding the meaning of the contract. *See Wells v. C.J. Mahan Constr. Co.*, Nos. 05AP-180, 05AP-183, 2006 WL 951444, at *6 (Ohio Ct. App. Apr. 11), *appeal denied*, 854 N.E.2d 1091 (Ohio 2006); *Dardinger v. Anthem Blue Cross & Blue Shield*, Nos. 99-CA-127, 99-CA-136, 2001 WL 575129, at *10 (Ohio Ct. App. May 22, 2001), *rev'd on other grounds*, 781 N.E.2d 121 (Ohio 2002); *Nicholson v. Tumer/Cargile*, 669 N.E.2d 529, 533 (Ohio Ct. App. 1995)(contract terms "control," and where unambiguous, "an expert opinion interpreting them has no effect."). Thus, while expert testimony may be admitted where it will assist in understanding complex matters which "would not be something within the normal experience of the members of the jury," *United States v. Winkle*, 477 F.3d 407, 415 (6th Cir. 2007), expert testimony is not needed "to aid the trier of fact in reading, interpreting, or discerning the impact of" documents such as insurance contracts "clearly and plainly written in English." *See City of Warrensville Heights v. City of Shaker Heights*, No. 38356, 1979 WL 209954, at *6 (Ohio Ct. App. Mar. 15, 1979); *Kail v. Motorist Ins. Cos.*, No. 38227, 1979 WL 209894, at *3 (Ohio Ct. App. Jan. 25, 1979).

## VI.    DISCUSSION RE MOTION TO COMPEL DISCOVERY

a.      *Motion to Compel Discovery re Carrie Campi Deposition*

Plaintiffs ask the Court to "order [Defendant ERII] to withdraw [its] objection to" the deposition of Carrie Campi, whom Plaintiffs identify as "a critical witness" responsible for writing the letter in which Defendant ERII initially denied coverage to Plaintiffs with respect to the *Peeler* action.  (*See* Doc. #63 at p. 2; *see also* Doc. #63 at Exh. 3, p. 3).  In response, Defendant ERII argues that because Ms. Campi is not a party, because ERII no longer employs Ms. Campi, and because ERII has advised Plaintiffs of Ms. Campi's current place of employment, the relief Plaintiffs seek as to Ms. Campi simply is not available from ERII.  (Doc. #70 at p. 2).

Defendant's position to that effect is consistent with the applicable procedural rules.  "[T]he Federal Rules are designed to ensure that district courts remain firmly in control of those depositions . . . involving nonparties located in their districts."  *United States v. Diabetes Treatment Ctrs. of America, Inc.*, 444 F.3d 462, 468 (6th Cir. 2006). Accordingly, "a motion to compel discovery or disclosure by a nonparty must be made to the court in the district where the discovery is being taken."  *Id.* (citing Fed. R. Civ. P. 37(a)(1))(footnote omitted). "A subpoena to depose a nonparty witness" also "must issue from the court for the district where the deposition will be taken," *id.* (citing Fed. R. Civ. P. 45(a)(2)(B)-(C)), and "any disputes that arise over the subpoena of a nonparty are [to be] decided by the court that issued the subpoena."  *Id.* (citing Fed. R. Civ. P. 45(c)(2)(B)).

As Plaintiffs themselves concede in their motion to compel, in formally responding

to Plaintiffs' request for suggested dates to depose Ms. Campi, Defendant ERII's attorney advised Plaintiffs, in writing, that "Ms. Campi's current employer is Darwin Professional Underwriters of Farmington, Connecticut." (*See* Doc. #42 at Exh. 3). Such information put Plaintiffs on notice both that Ms. Campi is subject to discovery under the terms of Fed. R. Civ. P. 37(a)(2) and 45, and that efforts to procure her proposed deposition cannot proceed through this Court. Notwithstanding Defendant ERII's additional suggestion that Ms. Campi's deposition "is [not] appropriate . . . at this juncture," and its request that Plaintiffs channel any attempt to contact Ms. Campi "through [ERII's attorney]," Defendant ERII did not in any way obstruct Plaintiffs' ability to acquire Ms. Campi's deposition through the appropriate means – *i.e.*, by subpoena issued from the federal district court encompassing Farmington, Connecticut. Plaintiffs' motion to compel discovery thus must be denied as to the Campi deposition request.

b. *Motion to Compel Discovery re "Continuing Education" Documents*

Plaintiffs also ask that Defendant ERII be forced to provide documents responsive to their second document request, which seeks any training, seminar or other continuing education materials provided by Defendant ERII to Carrie Campi, Todd McCullough or William Roy, the three ERII employees alleged to have been responsible for the no-defense decision. (Doc. #63 at pp. 2-4). Defendant ERII originally responded by objecting to that request as "vague, ambiguous, overly broad, unduly burdensome and improperly compound," and as seeking "information or documents that are neither relevant . . . nor reasonably calculated to lead to the discovery of admissible evidence."

(Doc. #42 at Exh. 3, Request for Production #2). It also suggested that any such documents may be "subject to the attorney-client privilege and the work product doctrine," or "confidential and proprietary." (*Id.*).

In opposing the motion to compel, Defendant ERII now expands on its objections by arguing that training materials provided to its employees can have no relevance as to the interpretation of the insurance contract language, which is the issue on which Plaintiffs' action turns. (Doc. #70 at pp. 3-4). ERII further urges that the request is unduly burdensome because two of the three named employees (Campi and Roy) no longer work for ERII and the third (McCullough) is dead. (*See id.* at p. 4, n.2 & at Exh. 1, Nace Declaration, ¶13).

A comparison of Plaintiffs' Request for Production of Documents #2 with the allegations of their complaint confirms the impression that their request for training, seminar and continuing education materials does <u>not</u> appear to be "reasonably calculated to lead to the discovery of admissible evidence" as to the insurance contract interpretation issue, *see* Fed. R. Civ. P. 26(b)(1), and Plaintiffs present no compelling argument to convince the Court otherwise. Under applicable Ohio law, the interpretation of the subject insurance policy's terms will turn on the plain meaning of the words used therein, not on any external materials intended to assist in preparing the insurance company's claim employees to perform their job responsibilities. *See, e.g., Foster Wheeler Enviresponse, Inc. v. Franklin County Convention Facilities Auth.*,678 N.E.2d 519, 526 (Ohio 1997); *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 652 N.E.2d 684, 686

(Ohio 1995). Plaintiffs' request for such materials therefore is not warranted by Count One of their complaint.

Arguably, such training materials <u>could</u> fall within the purview of permissible discovery from Defendant ERII, *see* Fed. R. Civ. P. 26(b)(1), as to Count Two of Plaintiffs' complaint, asserting a claim for breach of the duty of good faith. (*See* Doc. #3 at pp. 11-12). Given Defendant ERII's pending motion to dismiss that claim on the basis of the statute of limitations,[6] however, the questionable viability of that good faith claim[7] simply cannot justify the substantial burden to Defendant ERII of attempting to compile an array of materials – from among a much vaster array of records purportedly not organized in a fashion conducive to answering Plaintiffs' request (*see* Doc. #70 at Exh. A, Nace Declaration, ¶¶4-12) – that may have been distributed at various times to three different individuals no longer at the company. Because Plaintiffs' Request for Production #2 is both unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence, Defendant ERII's objection to that request is well taken.

    c.    *Motion to Compel Discovery re "Legal Authority" Interrogatories*

Plaintiffs next request that the Court compel Defendant ERII to answer Plaintiffs' Interrogatories ##3-5, all seeking the "legal authority" on which said Defendant relied in

---

[6]*See* Doc. 11 ("Joint Motion to Dismiss").

[7]*See* Doc. 37, pp. 6-8 ("Decision and Entry")(noting the applicability of Ohio Rev. Code §2305.09's four-year statute of limitations to Plaintiffs' "good faith" claims, and that Plaintiffs' complaint was filed "more than four years after the date" of injury they allege).

denying Plaintiffs a defense under their insurance policy. (Doc. #63 at p. 4). Defendant ERII objected to the interrogatories as "premature, vague, overbroad, unreasonably burdensome, ambiguous and partially unintelligible," and possibly "subject to the attorney-client privilege and the work product doctrine" (Doc. #42 at Exh. 3, Interrogatories #3-5). Defendant now argues that its employees' letters to Plaintiffs with respect to ERII's denial of coverage decision "are self-explanatory" in stating that ERII's determination was based upon an explicitly-identified policy exclusion, and that Plaintiffs' interrogatories "can only be interpreted as a request that [ERII] turn over . . . its legal research." (Doc. #70, pp. 5-6). Defendant ERII thus asserts that such interrogatories exceed the scope of permissible discovery.

Ironically, Plaintiffs cite no legal authority to support their entitlement to discovery of the "legal authority" their interrogatories seek. (*See* Doc. #63 at p. 4). Their somewhat opaque argument on this issue,[8] however, appears to suggest that no privilege or exemption could apply so as to insulate from discovery the legal authority relied upon by Defendant ERII's employees at the time they made the denial decision, presumably because that decision was not made in anticipation of this litigation. With respect to that inartfully pled position, the Court respectfully disagrees.

Defendant ERII originally raised objections on the basis of both of attorney-client and the work-product doctrine. "Claims of attorney-client privilege are narrowly

---

[8]*See* Doc. #63, p. 4 (arguing that Defendant ERII "cannot make a claim for attorney-client privilege or work product doctrine as it related to the time when they made [the denial of defense] decision, only as to subsequent time so the legal authority that they have now is not the issue").

construed . . .," to "appl[y] only where necessary to achieve [the privilege's] purpose and protect[ ] only those communications necessary to obtain legal advice." *In re Columbia/HCA Healthcare Corp. Billing Practices*, 293 F.3d 289, 294 (6th Cir. 2002)(citations omitted), *cert. dismissed*, 539 U.S. 977 (2003) . The work product doctrine, however:

> is distinct from and broader than the attorney-client privilege [citations omitted] . . .. So-called "fact" work product, the "written or oral information transmitted to the attorney and recorded as conveyed by the client" [citation omitted], may be obtained upon a showing of substantial need and inability to otherwise obtain without material hardship [citation omitted]. However, **absent waiver, a party may not obtain the "opinion" work product of his adversary; i.e., "any material reflecting the attorney's mental impressions, opinions, conclusions, judgments, or <u>legal</u> <u>theories</u>."**

*Id.* (emphasis added). That statement is consistent with the Supreme Court's observation in *Hickman* that "[n]ot even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney." 329 U.S. at 510. Because Plaintiffs' request for Defendant ERII's "legal authority" resembles the rejected attempt in *Hickman*, "without purported necessity or justification, to secure" the mental impressions "formed by an adverse party's counsel in the course of his legal duties," Plaintiffs' request, too, "falls outside the arena of discovery." *See id.* As such, Plaintiffs' motion to compel answers to their Interrogatories #3-5 is denied.

　　　e.　　*Motion to Compel Discovery re Request for Production #5*

　　　Coupled with their request to compel an answer to their Interrogatory #3,

Plaintiffs' motion also seeks to compel a response to what they twice refer to as their Request for Production #5. (*See* Doc. #63 at pp. 4, 8). As Defendant ERII's opposing memorandum aptly notes, however (Doc. #70 at p.5), Request for Production #5 appears to bear no relationship to Interrogatory #3, and instead relates to Plaintiffs' Interrogatory #2, as to which Plaintiffs have not moved for discovery relief. (*See* Doc. #42 at Exh. 3, Request for Production #5). Moreover, Plaintiffs have advanced no argument as to any documents alleged to be discoverable but not produced under Request for Production #5. (*See* Doc. #63 at p. 4). Particularly in light of Defendant ERII's representation that it in fact already has produced documents responsive to that request (*see* Doc. #70 at p. 5), the Court has no basis for granting Plaintiffs relief regarding Request for Production #5.

*f.    Motion to Compel Discovery re Interrogatory #6*

In responding to Plaintiffs' motion to compel their response to Interrogatory #6, Defendant ERII asserts that its original answer to that interrogatory "was appropriate and complete," but that "in an effort to minimize motion practice," it nonetheless has served Plaintiffs with a supplemental response to that Interrogatory. (Doc. #70 at p. 6). Accepting that representation at face value, and having heard nothing further from Plaintiffs by way of reply memorandum or otherwise regarding that issue, the Court assumes that Defendant ERII's supplemental response has resolved the parties' dispute, and that Plaintiffs' motion therefore is moot as to Interrogatory #6.

*g.    Motion to Compel Discovery re Other Insureds*

Defendant ERII accurately characterizes Plaintiffs' Interrogatories #7-9 and

Request for Production of Documents #8 as "all concern[ing ERII's] relationship with insureds other than [Plaintiffs]." (Doc. #70 at p. 6). In Interrogatory #7, Plaintiffs ask for specific information about any claim or suit "<u>ever presented</u>" against Defendant ERII that alleges "that it was improper for [ERII] to deny a defense . . . pursuant to . . . Section III C . . . because 'the entire policy does not apply if there is a claim for emotional distress.'" (Doc. #42 at Exh. 1, Interrogatory #7)(emphasis added). In Interrogatory #8, Plaintiffs request similar identifying information about any "court decision anywhere in the United States that construes any part or portion of" language like that found in Plaintiffs' insurance policy with Defendant ERII or the attached endorsements. (*Id.*, Interrogatory #8). Their Request for Production #8 seeks copies of all such decisions, together with "the briefs filed by both sides." (*Id.*, Request for Production #8). Finally, Interrogatory #9 seeks identifying information about any instance in which Defendant ERII "<u>ever</u> excluded a defense to one of its insureds based on" Section III(C). (*Id.*, Interrogatory #9) (emphasis added). Insisting that denial of a defense pursuant to Section III(C) is "the crux of the case," Plaintiffs urge – again without citing any legal authority – that they are entitled to discovery of all of the requested items. (*Id.*, pp. 5-7).

Reported cases offer limited guidance regarding the discoverability of information about non-party claims against an insurance company defendant, but a decision by another magistrate judge in this Court is somewhat instructive. In *Retail Ventures, Inc. v. National Union Fire Ins. Co. of Pittsburgh*, No. 2:06-CV-443, 2007 WL 3376831, at *5 (S.D. Ohio Nov. 8, 2007) (King, M.J.), plaintiffs seeking recovery from their insurance

company for losses sustained as a result of theft of customer data from plaintiffs'
computer systems sought discovery of "information related to other policyholders' claims
and complaints" against the same insurance carrier for similar losses.  In addition to
accepting the defendant's objection to such discovery requests as "overbroad and unduly
burdensome," the Court also opined that the requested information was of questionable
relevance.  *See id.* (citing, *inter alia*, *Leksi v. Federal Ins. Co.*, 129 F.R.D. 99 (D.N.J.
1989)).  The Court therefore declined to compel production of information about other
insureds' claims, finding both that the request was "not reasonably calculated to lead to
the discovery of admissible evidence," and "that the burden and expense of responding to
this extensive discovery request outweighs its likely benefit."  *Id.*; *see also* Fed. R. Civ. P.
26(b)(2)(c)(iii) (specifically authorizing courts to limit the extent of discovery under such
circumstances).

Like the Court in *Retail Ventures*, the Court here is unpersuaded that the range of
information Plaintiffs seek about other insureds' claims or suits against Defendant ERII
falls within the scope of permissible discovery.  As noted *supra*, this Court must interpret
the insurance policy at issue according to the plain meaning of its terms.  *See Foster
Wheeler Envirespose, Inc.*, 678 N.E.2d at 526; *Guman Bros. Farm*, 652 N.E.2d at 686.
Accordingly, while the manner in which Defendant ERII has interpreted "the language of
an identical policy in an identical situation" would be relevant to that inquiry, relevancy is
not the sole consideration.  *See Leksi, Inc.*, 129 F.R.D. at 105.  "[D]iscovery must be
proportional, as well as relevant, to the lawsuit, and must be tailored to the case at hand."

*Id.*

Defendant ERII has projected that it would take "twenty full-time employees . . . over four years" to review Defendant ERII's more than two million closed files simply in order to identify which files involved "directors and officers" ["D&O"] policies such as the one implicated in Plaintiffs' action here. (*See* Doc. #70, Exh. 1, Nace Declaration, ¶¶4, 7). Determining whether each D&O policy thus identified involved policy language and circumstances comparable to Plaintiffs' would require still more time. (*Id.*, ¶¶8-9).

As competent evidence suggests that the burden and expense of requiring Defendant ERII to review all such files outweighs the "remote" relevance (*see Leksi, Inc.*, 129 F.R.D. at 105) of information about all comparable claims or suits "ever" brought against Defendant ERII (Doc. #42 at Exh. 3, Interrogatory #7), Defendant ERII's objection to Interrogatory #7 as "overly broad and unduly burdensome" is well taken. Nevertheless, given the indisputable relevance of instances in which Defendant ERII has interpreted "the language of an identical policy in an identical situation," *see Leksi, Inc.*, 129 F.R.D. at 105, the Court nonetheless determines that Plaintiff <u>is</u> entitled to <u>some</u> response, requiring a less onerous undertaking by Defendant ERII. The affidavit offered in support of Defendant ERII's opposing memorandum indicates that "approximately 1500 open claim files involving [D&O] policies" are pending "at any given time" with ERII's claims-management affiliate. (Doc. #70 at Exh. 1, ¶3). Defendant ERII has offered nothing to suggest that reviewing those open files for the information requested in Plaintiffs' Interrogatory #7 would present an undue burden. Accordingly, the Court holds

that Plaintiffs are entitled to a response to their Interrogatory #7, limited to that information which can be gleaned from Defendant ERII's D&O policy claim files open as of the date of this Order.

As to Interrogatory #8 and related Request for Production #8, the Court notes that parties generally may not compel another party to produce documents that are readily available to the requesting party through other means. *See, e.g., Kormos v. Sportsstuff, Inc.*, No. 06-DV-15391, 2007 WL 2571969, at *3 (E.D. Mich. Sept. 4, 2007)(denying "request for copies of legal complaints because they are a matter of public record")(also quoting *Securities & Exchange Comm'n v. Samuel H. Sloan & Co.*, 369 F. Supp. 994, 995 (S.D.N.Y. 1973) ("It is well established that discovery need not be required of documents of public record which are equally accessible to all parties")). This approach is consistent with Fed. R. Civ. P. 33(d), which provides that "if the burden of deriving or ascertaining the answer [to a discovery request] will be substantially the same for either party," a responding party may answer by "specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could."

Accordingly, while the Court will not require Defendant ERII to produce copies of court decisions and briefs (*see* Doc. #42, Exh. 1, Request for Production #8), Plaintiffs' Interrogatory requesting that Defendant ERII identify court decisions interpreting the policy language in issue (*see id.*, Interrogatory #8) is well taken. Identifying information relative to such decisions should be more accessible to Defendant ERII than to Plaintiffs,

and "[w]ith the identifying information for each action, Plaintiff[s] can pursue the public filed documents [them]sel[ves]." *See Kormos,* 2007 WL 2571969, at *3.

Applying the logic articulated in regard to Interrogatory #7, *supra*, to Interrogatory #9 – as to which Defendant ERII again objected for reasons of overbreadth and undue burden (*see* Doc. #42 at Exh. 3, Interrogatory #9) –  the Court concludes that the relevance of such information merits that Defendant ERII provide the requested information only as to its D&O policy claim files open as of the date of this Order. Should Defendant ERII still maintain, in responding as to that limited time period, that the requested information about denials of defense to other insureds implicates the attorney-client privilege, the work product doctrine, or is otherwise protected from discovery (*see id.*), Defendant must produce a privilege log in accordance with Fed. R. Civ. P. 26(b)(5)(A) (providing that parties who withhold discovery materials on the basis of privilege "<u>must</u> describe the nature of the documents, communications, or tangible things not produced or disclosed . . . in a manner that . . .will enable other parties to assess the claim").

   h.  *Motion to Compel Discovery re Changes to Policy Language*

Finally, Plaintiffs seek to force Defendant ERII to respond to their Interrogatories #12 and #13, and Request for Production #11 (Doc. #63 at p. 7), all of which request information relative to any "different language" that Exclusion III(C) "ever" may have contained.  (Doc. #42 at Exh. 3, Interrogatories #12-13, Request for Production #11). Defendant ERII objected to all three such requests on the same "vague, ambiguous,

improperly compound, overly broad, unduly burdensome" grounds, and also asserted privilege as to Interrogatory #13. (*See id.*). In support of their motion to compel, Plaintiffs again assert Defendant ERII's purported ready access to that "critical" information (Doc. #63 at p. 7), whereas Defendant ERII again urges that any information responsive to such requests is irrelevant to the issue before the Court. (Doc. #70 at p. 9).

In the context of insurance coverage cases, information concerning the drafting history of particular insurance policy language has been determined to be relevant to the issue of how that language should be interpreted. *See Leksi, Inc.*, 129 F.R.D. at 107-08, 111-12; *see also Retail Ventures, Inc.*, 2007 WL 3376831, at *2. In its opposing memorandum, Defendant ERII does <u>not</u> contend that compiling the drafting history with respect to Exclusion III C would impose an unwieldy burden, only that it is "irrelevant." (Doc. #70 at p. 9). As this Court concurs in case law holding to the contrary, Defendant ERII's objections are overruled, and said Defendant must respond to Plaintiffs' drafting history discovery requests contained in Interrogatories #12 and #13, and Request for Production of Documents #11.

## VII. DISCUSSION RE MOTION TO STRIKE EXPERT TESTIMONY

Finally, Defendant ERII has moved to strike the testimony of Plaintiffs' designated expert witness, Robert P. Rutter, Esq. (Doc. #80). Defendant ERII urges that Mr. Rutter's expert report "opines solely on questions of law that are the province of the Court and which are not properly the subject of witness testimony, expert or not." (*Id.* at p. 1). Plaintiffs, however, suggest that Defendant ERII "waived" any objection to Mr.

Rutter's proposed testimony by not raising the issue during prior Court proceedings.

(Doc. #81 at p. 2). As to the merits of Defendant's objection, Plaintiffs further urge that

Mr. Rutter's proposed testimony is admissible for its intended purpose. Acknowledging

that the preliminary report produced by Mr. Rutter "does contain language which has the

proclivity to conclusions of law" (*id*. at p. 4), Plaintiffs nonetheless argue that "this does

not justify excluding [the] entire" report, and that it would be "premature" strike Mr.

Rutter's testimony prior to his deposition. (*Id.* at pp. 4, 5).

Although presented as a "motion to strike," Defendant ERII's request for relief in

this instance more properly could be termed a "motion in limine," per the following:

> A motion *in limine* is a request for guidance by the court
> regarding an evidentiary question. The trial court may, within
> its discretion, provide such guidance by making a preliminary
> ruling with respect to admissibility. The parties may then
> consider the court's ruling when formulating their trial
> strategy . . . A ruling on a motion *in limine* is therefore
> essentially an advisory opinion by the trial court.

*United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983)(emphasis in original), *aff'd*,

489 U.S. 38 (1984). A trial court properly may grant a motion in limine to exclude

"opinion testimony . . . regarding legal conclusions" in order to avoid the danger of

conveying a witness's legal impressions to the jury, thereby "invad[ing] the province of

the court to determine the applicable law and to instruct the jury as to that law." *Jimkoski

v. State Fire Mut. Auto Ins. Co.*, 247 Fed. Appx. 654, 662 (6th Cir. 2007)(citing *Torres v.

County of Oakland,* 758 F.2d 147, 150 (6th Cir.1985)).

Given the "advisory" nature of a motion in limine, as well as the potential effect of

its outcome on the parties' respective trial preparation and strategies, Defendant ERII's motion cannot be said to be premature at this time. Indeed, an early decision on disputed evidentiary issues clearly benefits the parties by allowing them an opportunity to develop alternative approaches to compensate for evidence that may be deemed admissible or inadmissible at trial. Neither can Defendant ERII be said to have "waived" any objection to the relevance [or lack thereof] of Mr. Rutter's expert testimony by failing to raise its concerns earlier during pretrial proceedings. Plaintiffs' diametrically opposed arguments regarding the motion's timeliness are rejected, leading to the motion's merits.

The expert report produced by Plaintiffs' designated expert in essence asserts Mr. Rutter's opinion as to the manner in which certain critical provisions of Plaintiffs' insurance contract with Defendant ERII should be interpreted (*see* Doc. #80 at Exh. A, pp. 7-10), analyzed in comparison to "standard defense provisions contained in commercial general liability and homeowner policies," Ohio law, and general "Rules of Insurance Policy Interpretation." (*See id.*, pp. 3-5, 5-6, & 6-7). In summary, Mr. Rutter opines that "ERII should have defended the *Peeler* lawsuit," and "incorrectly refused" to do so, resulting in damages to Plaintiffs. (*Id.*, p. 10).

Plaintiffs cite two cases in support of the admissibility of Mr. Rutter's proffered expert testimony to that effect. (*See* Doc. #81, pp. 3-4). In one of those decisions, a federal district court in Pennsylvania did find that a proffered expert's opinion that an insurance company "had no reasonable basis for its action" (denying coverage) "could be helpful to the jury." *Kraeger v. Nationwide Mut. Ins. Co.*, No. 95-7550, 1997 WL

109582, at *1 (E.D. Pa. March 7, 1997). That court therefore denied a motion in limine to exclude the expert's testimony. *Id.* In the other cited case, a California federal district court affirmed the appropriateness of expert testimony to assist a jury "in assessing the conduct and motives of an insurance company in denying coverage under its policy." *Hangarter v. Paul Revere Life Ins. Co.*, 236 F. Supp.2d 1069, 1089-90 (N.D. Cal. 2002), *rev'd in part on other grounds*, 373 F.3d 998 (9th Cir. 2004). That court, too, had denied a motion in limine to exclude the proffered testimony. *Id.* at 1089.

Significantly, however, as Plaintiffs' opposing memorandum implicitly concedes, in both cases cited by Plaintiffs, the expert's opinion seems to have been restricted to the singular issue of <u>bad</u> <u>faith</u>. *See id.* (*See also* Doc. #81 at p. 3)("Expert testimony . . . is appropriate in . . . insurance bad faith" cases). The same is true in most other cases found by this Court to have permitted expert testimony with respect to insurance coverage disputes. *See, e.g.*, *Furr v. State Farm Mut. Auto Ins. Co.*, 716 N.E.2d 250, 258 (Ohio Ct. App. 1998) (expert testimony that insurance claim was "handled in a manner well below appropriate standards of care" was appropriate because it "relates to matters beyond the knowledge or experience possessed by laypersons or dispels a misconception common among laypersons."). Conversely, other courts have declined to permit expert testimony even in the context of "bad faith" determinations, finding it to "invade the province of the jury to delineate when a breach of good faith occurred." *See Marketfare Annunciation, LLC v. United Fire & Cas. Co.*, No. 06-7232, 2008 WL 1924242, at *2 (E.D. La. Apr. 23, 2008)(citing *Crow v. United Benefit Life Ins. Co.*, No.3:00CV1375G, 2001 WL 285231

(N.D. Tex. Mar. 16, 2001)); *see also Thompson v. State Farm Fire & Cas. Co.*, 34 F.3d 932, 941 (10th Cir. 1994)(affirming district court's exclusion of bad faith expert as irrelevant).

Moreover, as to insurance coverage issues where the parties' rights are "governed by the written contract between them, any evidence concerning the custom of the insurance industry with regard to matters covered in the contract" is "irrelevant," and a trial court does not err by refusing to admit expert testimony on such industry practices. *City of Warrensville Heights*, 1979 WL 209954, at *6; *Kail*, 1979 WL 209894, at *3. Plaintiffs have directed the Court to not a single decision – and certainly none binding on this Court – suggesting that an expert's opinion is appropriate as to the proper interpretation of specific, non-technical contract terms within an insurance policy. The most reasonable reading of Mr. Rutter's report suggests that the substance of his opinion is directed to such contract interpretation issues, rather than to the question of bad faith.

Examining Mr. Rutter's proffered expert report in light of the allegations of the complaint, this Court concludes that the expert testimony Plaintiffs seek to admit bears little resemblance to the evidence at issue in the two cases Plaintiffs cite, and is more akin to the evidence excluded in *Coregis Ins. Co. v. City of Harrisburg*, No.1:03-CV-920, 2005 WL 2990694, at *3 (M.D. Pa. Nov. 8, 2005), cited by Defendant. Like that court, this Court finds that the proffered expert's report in this case contains "inappropriate legal conclusions about . . . the proper means of interpreting" the relevant insurance policy language, and "strays . . . into an impermissible effort" to usurp the Court's role in

resolving "pure legal questions." *Id.*; *see also Jimkoski*, 247 Fed. Appx. at 662; *Wells*, 2006 WL 951444, at *6 (trial court erred in allowing expert testimony as to meaning of provision in written shareholder agreement).

Particularly in light of the pending motion to dismiss Plaintiffs' bad faith claim against Defendant ERII (*see* Doc. #7),[9] this Court currently can discern no way in which the proffered expert opinion of Mr. Rutter "could assist the trier of fact to understand the evidence or to determine a fact in issue" relative to the limited issues of contract interpretation likely to be presented to a jury with respect to this action. Whether or not the insurance contract terms are ambiguous is a question of law to be determined by the Court, and is not dependent upon any purported expert's ability to interject uncertainty. . *See Lager v. Miller-Gonzalez*, 896 N.E.2d 666, 669 (Ohio 2008) ("Ambiguity exists only when a provision at issue is susceptible of more than one reasonable interpretation" and "cannot [be] create[d] . . . where there is none"). Moreover, to the extent that any ambiguity is found to exist in the insurance contract language, Ohio law dictates that such ambiguity be construed against the drafter, *i.e.*, Defendant ERII as the insurance carrier. *See id.* ("ambiguous provisions in an insurance policy must be construed strictly against the insurer and liberally in favor of the insured"). Again, there is no foreseeable need for expert testimony as to that issue. As the proffered expert testimony does not appear to comport with Fed. R. Evid. 702's requirements for the admissibility of expert testimony,

---

[9]*See also* n.3, re the questionable validity of that bad faith claim.

Defendant ERII's motion to strike (Doc. #80) is well taken.

**IT THEREFORE IS RECOMMENDED THAT:**

1. Defendant Executive Risk Indemnity, Inc.'s motion to dismiss Count II of Plaintiffs' complaint (Doc. #7) be GRANTED, and that Count II of Plaintiffs' complaint (Doc. #3, ¶¶ 27-35) be DISMISSED with prejudice;

2. Plaintiffs' motion to compel discovery (Doc. #63) be GRANTED in part, and that Defendant Executive Risk Indemnity, Inc. be directed to respond, within twenty (20) days of the date of the Court's final Order, to Plaintiffs' Interrogatories #7-9, limited to information available from Defendants' currently open D&O policy claim files; and to Interrogatories #12-13 and Request for Production of Documents #11;

3. Plaintiffs' motion to compel discovery (Doc. #63) be DENIED in all other respects; and

4. Defendant Executive Risk Indemnity, Inc.'s motion to strike expert testimony (Doc. #80) be GRANTED.

January 27, 2009            <u>   s/ Sharon L. Ovington   </u>
                                           Sharon L. Ovington
                            United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten (10) days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen (13) days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).